Missouri Pacific Railroad Company et al. *v.* Lueter.

4-5012

Opinion delivered April 4, 1938.

*R. E. Wiley* and *Richard M. Ryan,* for appellants.
*Glover & Glover,* for appellee.

GRIFFIN SMITH, C. J. Katherine Lueter sued the Missouri Pacific Railroad Company and its trustee for damages resulting from exposure and detention, and procured judgment for $500. The questions to be determined are whether appellee was injured because of the negligence of appellants; and, if these allegations are sustained, was there substantial proof to sustain the amount awarded?

Appellee resides at Malvern. Mrs. Mildred Edwards, of Hoxie, had been visiting appellee. On the afternoon of December 17, 1936, appellee walked with Mrs. Edwards to the Missouri Pacific passenger station to assist her guest in boarding a train due to arrive about two o'clock. Appellee carried Mrs. Edwards' five-months-old baby and Mrs. Edwards carried two grips.

When the train arrived Mrs. Edwards asked an attendant if appellee might enter the car and assist with the baby and baggage. Appellee says that she, also, asked if there was time "to get on the train." Receiving an affirmative answer, appellee carried the baby to a vacant seat, and while doing so the train started. She testified that she ran to the rear of the car and tried to get off, but was prevented from so doing. "The conductor came back and brought me a slip of paper and told me I would have to go to Little Rock, but could come

back. The train stopped once between Malvern and Little Rock—at Benton."

Appellee remained at the Little Rock station until after seven o'clock in the evening and then returned to Malvern. She claims to have had no money, and was without means of communicating with her husband or other interested parties. Upon arriving at Malvern at 9:30 she walked from the station to her home, the trip requiring about thirty minutes. The night was "cold, cloudy and damp." Appellee "imagined" the distance from the station to her home was about a mile. Other estimates were from five to eight blocks. "I was rendered sick by this exposure and excitement; was forced to go to bed and have a doctor; I had a nervous breakdown." Appellee then testified that, as a consequence of the nervous condition so occasioned, and as a result of the cold and its consequential injuries, her menstrual periods had been interfered with, and at the time of trial she had not recovered.

Doctor W. F. Barrier testified that he was called to attend appellee the morning of December 18. "She seemed to be nervous and was cramping; had a slight temperature. It seems she had contracted a cold. She came to my office after that, and her husband came up and reported to me three or four times within the next two weeks, and she was up another time. Her heart action was a little bad the first time I saw her." Dr. Barrier had been employed as physician for the Missouri Pacific Railroad Company seventeen or eighteen years.

Testimony on behalf of appellants was that the train had proceeded a considerable distance beyond the station when the conductor discovered Mrs. Lueter's presence; that the train was late, and a delay of sixteen minutes would have been occasioned by stopping and backing to the station.

The conductor testified: "At little Rock I took Mrs. Lueter to the matron and directed that she be cared for, then instructed the dispatcher to wire Malvern and notify any party or Mr. Lueter if inquiry were made. I saw appellee returning on train No. 3 that night. I talked to

her after she got off at Malvern and asked her if everything was all right. Another lady was with her and this lady said she was going to take Mrs. Lueter home. Appellee made no complaint when I told her I would take her to Little Rock. She said she did not have a telephone in her residence and I told her, therefore, that I would not be able to get in touch with her people. She said that was all right."

Trainman H. L. Nicholas testified that appellee asked permission to carry the baby into the car; that he told her to hurry, as the train would be there only a short time; that the train started before appellee could get off; that she tried to jump from the moving car, but witness restrained her; that he pulled the bell cord, but the train did not stop.

■ ■ In permissively entering the train, appellee was performing a service on behalf of a paid passenger —a service ordinarily performed by a train attendant. Appellee's unwilling detention having been admitted, it follows that appellants' conductor, with knowledge of appellee's predicament, elected to impose upon appellee the incidental inconveniences of a trip to and from Little Rock rather than add sixteen minutes to his belated status. In so doing appellants became liable for any direct or consequential damage to appellee as to which such conduct was the proximate cause. Appellee's situation was somewhat analogous to that of a passenger, in that she was permitted to enter the train. She became a passenger when the conductor gave her the slip of paper referred to, which served as a pass. *St. Louis, Iron Mountain & Southern Railway Company* v. *Evans*, 94 Ark. 324, 126 S. W. 1058; *St. Louis, Iron Mountain & Southern Railway Company* v. *Person*, 49 Ark. 182, 4 S. W. 755.

■ The testimony of appellants' physician sustains appellee's claim that she suffered physical stress and disability following the experience. Appellee's statement that she contracted a cold while walking from the station to her home is not altogether unreasonable; and this, coupled with the doctor's confirmation of subsequent ill-

ness, was sufficient to warrant the jury's finding that appellee's exposure was attended by temporary physical impairment.

In view of Dr. Barrier's testimony that but a few years ago appellee had a miscarriage; that prior to such time she was nervous; that he treated her about a year ago for nervousness; that he did not consider her condition permanent or serious; that his bill for professional services was only $10; that appellee was not nervous about coming to court, and in view of the further fact that Dr. Barrier, although an employee of appellants, was called by appellee as her witness, we feel that the judgment is excessive. Therefore, if appellee will, within fifteen days, enter a remittitur of $250, the judgment will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial.

HUMPHREYS, J., dissents as to the modification.